UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COLIN SPINK,

Plaintiff,

-against-

DUTCHESS COUNTY SHERIFF'S DEPARTMENT,

Defendant.

25-CV-5839 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

After Plaintiff Colin Spink called law enforcement to report a break-in and theft at his property, a Sherriff's Deputy from the Dutchess County Sheriff's Office arrived to investigate. After the deputy arrived, however, he "exhibited behavior that demonstrated a clear deviation from standard law enforcement protocols and proper investigation procedures" and ultimately "treat[ed] the victim"—Plaintiff—"as a suspect." Plaintiff therefore brought a case alleging a multitude of claims: for negligent investigation, violations of the Fourth and Fourteenth Amendments to the United States Constitution, false imprisonment, intentional infliction of emotional distress, abuse of process, a violation of Article I, Section 12 of the New York Constitution, and municipal liability. But, as described below, all of Plaintiff's claims fail. Accordingly, the Court grants Defendant's motion to dismiss for failure to state a claim.

**BACKGROUND**

The following facts are, unless otherwise noted, taken from the Complaint and are presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009); ECF No. 1-1 ("Compl.").

On or about June 13, 2024, unknown intruders broke into Plaintiff Colin Spink's ("Plaintiff") garage and stole at least $100,000-worth of specialized glass-blowing equipment

and inventory. ¶ 7. The theft occurred at Plaintiff's home, located at 2887 Route 9G in Rhinebeck, New York. ¶¶ 6–7. Plaintiff contacted law enforcement multiple times immediately after discovering the break-in. ¶ 8.

A Sherriff's Deputy from the Dutchess County Sheriff's Office (the "Deputy") then arrived at Plaintiff's home. ¶ 10. Upon arrival, the Deputy "exhibited behavior that demonstrated a clear deviation from standard law enforcement protocols and proper investigation procedures." *Id.* The Deputy "repeatedly interrupted" Plaintiff and eventually "order[ed] Plaintiff to remain stationary with aggressive gesturing." ¶¶ 11, 14. He "persistently attempted to gain access to the main house," ¶ 12; "[w]alk[ed] past the clearly damaged garage door to inspect the rear of the property," ¶ 13; and "[e]xamin[ed] a partitioned area of the garage separated by blue tarps," *id.* He also "search[ed] through Plaintiff's possessions despite Plaintiff's explicit objections on six separate occasions." *Id.*

Additionally, the Deputy "demand[ed]" Plaintiff's identification, "interrogat[ed]" Plaintiff about his "business and living situation," made "implied threats" about confiscating property, and conducted what Plaintiff describes as "unauthorized searches of Plaintiff's property" by "pressing his bodycam against windows while illuminating the interior [of the home]." ¶ 14. All in all, the Deputy "treat[ed] the victim"—Plaintiff—"as a suspect." ¶ 28.

As a result, Plaintiff served a notice of claim on the Dutchess County Sheriff's Office on September 13, 2024. ECF No. 7-2 ("Notice of Claim"). Plaintiff then brought the instant lawsuit in Dutchess County Supreme Court, alleging eight causes of action. *See* ECF No. 1-1. Plaintiff alleges (1) "negligence and failure to properly investigate," ¶¶ 16–20; (2) a Fourth Amendment violation pursuant to 42 U.S.C. § 1983 ("Section 1983"), ¶¶ 21–22; (3) a Fourteenth Amendment due process violation pursuant to Section 1983, ¶¶ 23–24; (4) false imprisonment, ¶¶ 25–26; (5)

intentional infliction of emotional distress, ¶¶ 27–28; (6) "malicious abuse of process," ¶¶ 29–30; (7) a violation of Article I, Section 12 of the New York Constitution, ¶¶ 31–32; and (8) a claim for negligent training and supervision pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), ¶¶ 33–34.

Plaintiff filed his summons and complaint, dated June 20, 2025, in state court on June 23, 2025. Compl. On July 16, 2025, Defendant removed the case to this Court. ECF No. 1. Defendant then moved to dismiss the case on September 8, 2025, for failure to state a claim. ECF Nos. 6, 8 ("MTD"); *see* Fed. R. Civ. P. 12(b)(6). On October 2, 2025, awaiting Plaintiff's opposition to the motion, the Court issued an Order to Show Cause directing Plaintiff to "articulat[e] good cause as to why [he] has failed to prosecute this case or respond to the pending motion to dismiss." ECF No. 9. Ten days later, on October 12, 2025, Plaintiff filed his Opposition. ECF No. 12 ("Opp."). Plaintiff's counsel explained that "[t]he delay was not willful," but instead "resulted from difficulties in locating and communicating with Mr. Spink following the removal of this case from Dutchess County Supreme Court to federal court." ECF No. 14. The Court accepted Plaintiff's late-filed Opposition, ECF No. 15, and Defendant submitted its Reply on October 24, 2025, ECF No. 16 ("Reply").

Having reviewed the parties' briefing, the Court concludes that Plaintiff's negligent investigation claim fails as a matter of law and that Plaintiff fails to state any of his remaining claims. Accordingly, the Court GRANTS Defendant's motion to dismiss in its entirety.

**LEGAL STANDARD**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)

(internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

**DISCUSSION**

As an initial matter, Defendant argues—and Plaintiff concedes—that the Dutchess County Sheriff's Department is not a proper defendant in this action. MTD at 4–5; Opp. at 5 (acknowledging that "the Dutchess County Sheriff's Department is not a suable entity"). "Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002). Plaintiff therefore asks the Court to substitute the County of Dutchess as the defendant in this action. ECF No. 11 ("Pl. Counsel Affirmation") ¶ 3; *see also* Opp. at 5–6. The request to substitute the County of Dutchess as the defendant is granted. *See Smith v. Westchester Cnty. Jail*, No. 17-CV-9858 (CM), 2018 WL 11300397 (S.D.N.Y. Feb. 2, 2018) (making similar substitution).

The Court thus evaluates Plaintiff's claims on the merits.[1] The following discussion proceeds in nine parts. First, the Court concludes that Plaintiff's negligent investigation claim fails as a matter of law. Second, the Court finds that Plaintiff fails to state a Fourth Amendment claim because he consented to the Deputy's search. Third, the Court evaluates Plaintiff's due process claim and determines that he fails to state both a procedural and substantive due process claim: first, because he has no protected property or liberty interest upon which to state his procedural claim; and second, because a substantive due process analysis is inappropriate where a claim is also covered by the Fourth Amendment, as it is here. Fourth, because Plaintiff alleges no facts demonstrating that the Deputy intended to confine him, that Plaintiff was actually confined, or that the Deputy's actions were actual threats sufficient to confine him, the Court concludes that Plaintiff fails to state a false imprisonment claim. Fifth, the Court decides that Plaintiff fails to state a claim for intentional infliction of emotional distress because none of his allegations meet the high threshold required to successfully allege that claim. Sixth, the Court determines that—because Plaintiff fails to allege that the Deputy acted with any improper purpose—Plaintiff also fails to state a claim for abuse of process. Seventh, Plaintiff fails to state a claim pursuant to Article I, Section 12 of the New York Constitution, the Court concludes, for the same reasons that Plaintiff fails to state a claim under the Fourth Amendment. Eighth, the Court determines that Plaintiff fails to state a claim for municipal liability under *Monell* because he fails to allege beyond conclusory allegations any pattern, practice, or policy that would

[1] Defendant also argues that many of Plaintiff's claims must be dismissed because his Notice of Claim does not include those same theories of liability alleged in his Complaint. MTD at 5. Because all of Plaintiff's claims fail on their merits, however, the Court need not and does not address this argument.

support such a claim—and because he fails to state any underlying constitutional violation. Finally, the Court denies Plaintiff leave to amend because amendment would be futile.

## I. Plaintiff's Negligent Investigation Claim Fails as a Matter of Law

First, Plaintiff alleges Defendant's "negligence and failure to properly investigate" the break-in at his property. Compl. ¶¶ 16–20. However, "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Robinson v. United States*, 332 F. Supp. 3d 516, 528 (E.D.N.Y. 2018) ("New York does not recognize a cause[] of action for negligent investigation or prosecution."); *Mancino v. Town of Glenville*, 227 N.Y.S.3d 464, 466 (3d Dep't 2025) ("It is well settled that New York does not recognize a cause of action for negligent investigation."). "Accordingly, any claim for negligent investigation fails as there is no private analogue for . . . such a claim in New York." *Robinson*, 332 F. Supp. 3d at 528 (citing *Watson*, 865 F.3d at 134–35).

Plaintiff's negligent investigation claim therefore fails as a matter of law.

## II. Plaintiff Fails to State a Fourth Amendment Claim

Second, Plaintiff alleges that, pursuant to Section 1983, the Deputy's searches were unlawful under the Fourth Amendment. Compl. ¶¶ 21–22. "The Fourth Amendment prohibits unreasonable searches." *Smith v. City of New Rochelle*, No. 24-CV-9899 (JGLC), 2026 WL 776028, at *9 (S.D.N.Y. Mar. 19, 2026) (citing *Carpenter v. United States*, 585 U.S. 296, 303 (2018)). Warrantless searches are "per se unreasonable under the Fourth Amendment—subject

only to a few specifically established and well-delineated exceptions." *United States v. Weaver*, 9 F.4th 129, 138 (2d Cir. 2021) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

"One such exception to the warrant requirement," however, "is a search conducted on consent, in that an individual's consent to a search renders it reasonable." *United States v. Pena Ontiveros*, 547 F. Supp. 2d 323, 330 (S.D.N.Y. 2008), *aff'd sub nom. United States v. Rico Beltran*, 409 F. App'x 441 (2d Cir. 2011)."The standard for measuring the scope of [someone's] consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the [other person]?" *Handy v. City of New Rochelle*, 198 F. Supp. 3d 298, 309 (S.D.N.Y. 2016) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). "An analysis of objective reasonableness is governed by the 'totality of the circumstances' standard." *Id.* (quoting *Pena Ontiveros*, 547 F. Supp. 2d at 331–32). "If a court finds that, under the totality of the circumstances, it was objectively reasonable for the officer to believe that the scope of the . . . consent permitted him to conduct the search that was undertaken, there is no Fourth Amendment violation." *Id.* (quoting *Pena Ontiveros*, 547 F. Supp. 2d at 331–32).

That is precisely what the allegations demonstrate here. Plaintiff argues that the Deputy "repeatedly attempted to search areas of his home that were not breached" in the break-in, "despite Plaintiff's clear and repeated objections." Opp. at 14. But Plaintiff only ever alleges that the Deputy inspected the rear of the property, examined areas of the garage that were "separated by blue tarps," searched Plaintiff's possessions in the garage, "*attempted*" to enter the main house, and looked inside the house's windows. Compl. ¶¶ 12–14 (emphasis added). In other words, the Deputy looked around the alleged crime scene and the surrounding areas in a manner that was "objectively reasonable for the officer" based on Plaintiff's description of the break-in.

*Handy*, 198 F. Supp. 3d at 309 (citation omitted). *See id.* ¶ 8; *cf. Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 289–90 (S.D.N.Y. 2015) (finding unconstitutional a search where police knew that they were in the wrong apartment). Plaintiff called law enforcement to his house to investigate a break-in; according to the Complaint, the Deputy then searched the garage and immediate areas—never entering Plaintiff's house—in order to properly investigate Plaintiff's own allegations. *See* Compl. ¶¶ 8–14. Based on Plaintiff's own allegations, he therefore consented to the Deputy's searches as alleged.

Accordingly, Plaintiff fails to state a Fourth Amendment claim.

## III. Plaintiff Fails to State a Fourteenth Amendment Due Process Claim

Next, Plaintiff asserts a Fourteenth Amendment due process violation pursuant to Section 1983. Compl. ¶¶ 23–24. "Defendant deprived Plaintiff of property interests and due process rights through deliberate failure to investigate the theft," Plaintiff alleges. *Id.* ¶ 24. This claim also fails.

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Weinstein v. Krumpter*, 386 F. Supp. 3d 220, 234 (E.D.N.Y. 2019) (quoting *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012)). In order to state a procedural due process claim based on an alleged deprivation of a property interest, then, "a plaintiff must identify a property interest protected by the Due Process Clause." *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 34 (2d Cir. 2010). The Supreme Court has defined Due Process Clause-protected property interests as follows: "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock v. Gonzales,* 545 U.S.

748, 756 (2005) (quoting *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972)). The Second Circuit, for its part, has held that there is no "'legitimate claim of entitlement' to a police investigation." *Harrington*, 607 F.3d at 35 (citing *Castle Rock*, 545 U.S. at 756).

Here, Plaintiff argues that "he was denied the basic procedural protections owed to crime victims: his report was not meaningfully investigated, his requests for evidence collection and supervisor review were ignored, and he was instead treated as a suspect." Opp. at 13. But Plaintiff has no "'legitimate claim of entitlement' to a police investigation." *Harrington*, 607 F.3d at 35 (citing *Castle Rock*, 545 U.S. at 756); *see also Mamot v. Geico Car Ins.*, No. 21-CV-6717 (LTS), 2021 WL 4443124, at *2 (S.D.N.Y. Sept. 27, 2021) (collecting cases) ("The Constitution of the United States does not provide individuals with an affirmative right to an investigation of their claims by the government that is protected by the Due Process Clause of the Fourteenth Amendment."). Accordingly, Plaintiff has alleged no due process-protected liberty or property interest upon which to state his procedural due process claim. *See* Compl. ¶¶ 23–24.

To the extent that Plaintiff also alleges a substantive due process violation of the Fourteenth Amendment, that claim also fails: a "[s]ubstantive due process analysis is inappropriate where a claim is covered by the Fourth Amendment." *Smith v. City of New Rochelle*, 2026 WL 776028, at *11 (quoting *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005)).

Therefore, Plaintiff has failed to state a due process claim under the Fourteenth Amendment.

### IV. Plaintiff Fails to State a False Imprisonment Claim

Fourth, Plaintiff fails to state a claim for false imprisonment. Compl. ¶¶ 25–26. "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549

U.S. 384, 388 (2007). "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curiam)). "A false imprisonment claim requires a prima facie showing of actual confinement or threatening conduct." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 294 (S.D.N.Y. 2011) (citation omitted).

Plaintiff alleges no facts demonstrating that the Deputy intended to confine him or that Plaintiff was actually confined. *See id.*; *see generally* Compl. Nor does Plaintiff allege that the Deputy's actions were actual threats, sufficient to confine him. *See* Compl.; *see Lipin v. Hunt*, 538 F. Supp. 2d 590, 602 (S.D.N.Y. 2008) ("Plaintiff does not allege that she was actually confined or threatened . . . and therefore does not state a claim for false imprisonment."). "[A] fear of being arrested also does not suffice to support a false imprisonment claim." *Copantitla*, 788 F. Supp. 2d at 294. Plaintiff's claim that the Deputy "unlawfully restrained [his] freedom of movement without justification by ordering Plaintiff to remain stationary with aggressive gesturing" is therefore insufficient to state a claim for false imprisonment. Compl. ¶ 25. That claim is also dismissed.

## V. Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress

Plaintiff's claim for intentional infliction of emotional distress ("IIED") also fails. Compl. ¶¶ 27–28. In New York, "[t]he state law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) the intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional

distress." *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. N.Y. Post Co.*, 596 N.Y.S.2d 350, 353 (1993)) "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Biswas v. City of New York*, 973 F. Supp. 2d 504, 535 (S.D.N.Y. 2013) (internal citation omitted). "Typically, in order to sustain an IIED claim, conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Fischer v. Maloney*, 402 N.Y.S.2d 991, 993 (1978)). That is why "IIED claims are generally disfavored under the State's law." *Id.*

Here, none of Plaintiff's allegations come close to meeting the high threshold demanded of IIED claims. None of the Deputy's actions alleged in the Complaint were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" or could be said to be "utterly intolerable in a civilized community." *Fischer*, 402 N.Y.S.2d at 993. Accordingly, Plaintiff's IIED claim is dismissed.

## VI. Plaintiff Fails to State a Claim for Abuse of Process

Next, Plaintiff alleges "malicious abuse of process." Compl. ¶¶ 29–30. To state a claim for abuse of process, a "plaintiff must show that the defendant '(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Hernandez*, 939 F.3d at 204 (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)). "As to the third prong of this test, 'to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action.'" *Id.* (quoting *Savino*, 331 F.3d at 77). "[A] malicious motive alone . . . does not give rise to a cause of action for abuse of process." *Id.* (quoting *Savino*, 331 F.3d at 77).

Plaintiff has failed to allege that the Deputy acted with any "improper purpose." *Hernandez*, 939 F.3d at 204; *see generally* Compl. Plaintiff called law enforcement to summon the Deputy to his home. Compl. ¶ 8. The Deputy then took steps to investigate the break-in. *Id.* ¶¶ 13–14. This investigation, as described, was entirely within the "legitimate ends of the process." *Hernandez*, 939 F.3d at 204 (quoting *Savino*, 331 F.3d at 76). Plaintiff has thus failed to state a claim for abuse of process.

## VII. Plaintiff Fails to State a Claim Under New York's Constitution

As to his seventh cause of action, Plaintiff alleges that the Deputy violated Article I, Section 12 of the New York Constitution, which—like the Fourth Amendment—protects "against unreasonable searches and seizures." N.Y. Const. art. 1, § 12; Compl. ¶¶ 31–32. "New York State's constitutional protections against unlawful search and seizures are coextensive with the Fourth Amendment standard." *Chinese Am. Citizens All. Greater N.Y. v. N.Y.C. Dep't of Educ.*, 802 F. Supp. 3d 483, 541 (S.D.N.Y. 2025) (collecting cases). Indeed, the text of the Fourth Amendment "is identical to that of the Article I, Section 12 of the New York State Constitution." *Mittelman v. Cnty. of Rockland*, No. 07-CV-6382 (CM), 2013 WL 1248623, at *23 (S.D.N.Y. Mar. 26, 2013). Accordingly, claims under both provisions "are subject to the same analysis." *Id.*

Therefore, Plaintiff's claim under Article I, Section 12 of New York's Constitution fails for the same reasons as Plaintiff's Fourth Amendment claim. *See supra* Section II.

## VIII. Plaintiff Fails to State a Claim for *Monell* Liability

Finally, Plaintiff fails to state a claim for negligent training and supervision pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Compl. ¶¶ 33–34. A claim for municipal liability under Section 1983 requires a plaintiff to plead three elements: "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional

right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal citations omitted); *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability).

"When a plaintiff sues a municipality under Section 1983, it is not enough for him to allege that one of the municipality's employees or agents engaged in some wrongdoing." *Smith v. City of New Rochelle*, 2026 WL 776028, at *3. "The plaintiff must show that the municipality itself caused the violation of his rights." *Id.* (citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). Typically, a "single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Aragon v. New York*, No. 14-CV-9797 (ER), 2017 WL 2703562, at *6 (S.D.N.Y. June 22, 2017) (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)).

Plaintiff alleges that "Defendant's conduct reflects a pattern, practice, and policy of institutional failures in training, supervision, and accountability." Compl. ¶ 34. However, Plaintiff fails to allege anything beyond the "single incident" in his Complaint to support these conclusory allegations. *Aragon*, 2017 WL 2703562, at *6. The Deputy's alleged "failure to follow basic crime scene investigation protocols," and other issues Plaintiff raises with the

Deputy's response, do not evince any kind of "pattern, practice, [or] policy." Compl. ¶ 34. Accordingly, Plaintiff has failed to "[d]emonstrat[e] that the municipality itself caused or is implicated in the constitutional violation[s]" he alleges. *McPhatter v. City of New York*, 823 F. Supp. 3d 227, 240 (E.D.N.Y. 2026) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004)).

Additionally, "a *Monell* claim requires an underlying constitutional violation" to be successful. *McPhatter*, 823 F. Supp. 3d at 239 (citing *Mastromonaco v. Cnty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) (summary order) ("It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation.")). As the Second Circuit has explained, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original); *see also Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). Here, "Plaintiff has failed to state a constitutional violation with respect to his other [Section] 1983 claims." *McPhatter*, 823 F. Supp. 3d at 239.

Accordingly, Plaintiff has failed to state a claim for *Monell* liability.

## IX. The Court Denies Leave to Amend

The Court also denies Plaintiff leave to amend. "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, further amendment would be futile. Plaintiff's fundamental allegations are insufficient to support his claims; "better pleading will not cure" the deficiencies. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Plaintiff does not suggest any further allegations that would cure these issues. And Plaintiff's counsel only seeks leave to amend "to clarify" the negligent investigation claim—explaining that "the claim is not for negligent investigation per se, but rather for the constitutional violations arising from the Deputy's arbitrary and capricious conduct." Pl. Counsel Affirmation ¶ 13. But, as discussed, Plaintiff fails to state any of his constitutional claims; "clarify[ing] the constitutional nature of the claims" would do nothing to alter the outcome. *Id.* ¶ 21. Therefore, the Court denies Plaintiff leave to amend.

**CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to change the case caption to replace Defendant "Dutchess County Sheriff's Department" with "County of Dutchess." Then, the Clerk of Court is respectfully directed to terminate ECF No. 6 and close the case.

Because Plaintiff's counsel has failed to file a Notice of Appearance in this case, Defendant's counsel is directed to serve this Opinion & Order on Plaintiff's counsel via e-mail by **October 1, 2026**, with proof of service filed on the docket by **October 2, 2026.**

Dated: September 30, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge